## CHERYL TERRY *v.* WILLIAM TERRY
### (AC 26843)

Flynn, C. J., and Bishop and DiPentima, Js.

---

Argued March 22—officially released July 3, 2007

*Campbell D. Barrett,* with whom were *Kevin W. Hadfield* and, on the brief, *C. Michael Budlong,* for the appellant (defendant).

*Ralph J. Monaco,* with whom, on the brief, was *Thomas J. Londregan,* for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendant, William Terry, appeals from the postjudgment orders of the trial court issued after the dissolution of his marriage to the plaintiff, Cheryl Terry. On appeal, the defendant claims that the court (1) improperly denied his motion to open the dissolution judgment on the basis of fraud or mutual mistake and (2) improperly denied his motion to vacate or reargue the denial of his motion to open. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The parties were married on August 30, 1981. A dissolution action was filed in 1997, and a judgment of dissolution was rendered on July 20, 1999. On June 23, 2005, the defendant filed a postjudgment motion to open and modify the judgment of dissolution. The defendant claimed that the judgment should be opened on the basis of fraud or mutual mistake because the plaintiff had failed to list the existence of a pending civil lawsuit on the sworn financial affidavit that she had filed at the time of the dissolution trial. The defendant requested that he be allocated a portion of the lawsuit proceeds.

The circumstances that gave rise to the lawsuit, which is at the center of this appeal, began in July, 1998. During that time, the plaintiff owned a school bus company and submitted a bid to the city of Hartford (city) in response to an invitation to bid for a proposed contract to provide bus transportation services for Hartford public schools. *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 270 Conn. 619, 623, 854 A.2d 1066 (2004). Her bid was rejected by the city, despite being the lowest bid. Id. Thereafter, in July, 1998, the plaintiff filed an action alleging, inter alia, equal protection and antitrust violations against the city, seeking money damages as well as temporary and permanent injunctive relief preventing the city from awarding the contract to any company other than itself. Id. The plaintiff's request for a temporary injunction was denied. Id.

In July, 1998, a hearing was held in the parties' dissolution action concerning the sale of the plaintiff's other two bus companies, and at that hearing the subject of the action against the city was discussed in open court before the defendant and his counsel. Additionally, the entire file pertaining to that action was turned over to

the defendant's counsel prior to the final hearings in the dissolution matter.

In April, 1999, the plaintiff filed her financial affidavit. Although the plaintiff's financial affidavit listed assets of almost $2 million and liabilities of only approximately $170,000, the lawsuit against the city was not listed as an asset or a contingent asset.

The court rendered a judgment of dissolution in July, 1999. The decision of the court provided for the distribution of the parties' assets and the custody of their minor child.

The lawsuit against the city proceeded, and, on February 3, 2000, the plaintiff authorized her attorneys to file an offer of judgment for $25,000. If the city had accepted the offer, then pursuant to the statute in effect at the time of the offer, namely, General Statutes (Rev. to 1999) § 52-192a (a), and Practice Book (2000) § 17-14, judgment would have entered in the plaintiff's favor for $25,000.[1] The court granted the city's motion for a

---

[1] General Statutes (Rev. to 1999) § 52-192a (a) provides: "After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case." Practice Book (2000) § 17-14 provides: "After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may, before trial, file with

directed verdict on all of the counts in the plaintiff's complaint, with the exception of the antitrust claim, which went to the jury. *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 270 Conn. 619. The jury returned a verdict in favor of the plaintiff for $500,000 on that claim. Thereafter, the court granted the city's motion to set aside the verdict.

Prior to the resolution of the claim for permanent injunctive relief, the plaintiff appealed from the judgment of the trial court setting aside the verdict on the antitrust claim. See *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 811 A.2d 1272 (2002).[2] Our Supreme Court dismissed the appeal, concluding that the plaintiff had not appealed from a final judgment because the claim for injunctive relief had not been determined. Id., 242. The case thereafter was reclaimed to the trial list, the trial court denied the plaintiff's request for a mandatory injunction to prevent the city from awarding the contract to another bidder, and the plaintiff again appealed. See *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 270 Conn. 619.[3] In August, 2004, our Supreme Court reversed the decision of the trial court setting aside the verdict and ordered that the verdict be reinstated. See id. In May, 2005, the plaintiff and the city entered into a stipulated judgment in the plaintiff's favor for $2.5 million, which represented the $500,000 jury verdict trebled and an award of $1 million

the clerk of the court a written 'offer of judgment' signed by the plaintiff or the plaintiff's attorney, directed to the defendant or the defendant's attorney, offering to settle the claim underlying such action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of such offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant."

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and the appeal was transferred to the Supreme Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] See footnote 2.

in attorney's fees and costs.[4] In the defendant's June, 2004 postjudgment motion to open and modify the judgment of dissolution, he requested that he be allocated a portion of the $1.5 million received by the plaintiff. He based his motion on claims of fraud and mutual mistake. On July 28, 2005, a hearing was held on this motion and other pending motions. The defendant did not appear in court, and his attorney proceeded on the motion to open the judgment without requesting a continuance of the proceeding. Ruling from the bench, the trial court denied the defendant's motion to open the judgment, reasoning that the defendant had full knowledge of the lawsuit.

On July 29, 2005, the defendant filed a motion for a continuance and a motion to vacate or reargue the July 28, 2005 order denying his motion to open. The motion to vacate or reargue was based on the claim that the defendant had been unable to attend the July 28 hearing on the motion to open due to health reasons and that his attorney was unable to present evidence in his absence. The defendant was present in court on July 29, 2005, and testified that he had been suffering from chest pains the previous day, had gone to a hospital and had remained there until four o'clock in the evening when he signed out against medical advice. The court granted the continuance of other unrelated motions because of the defendant's medical reasons and rescheduled hearings on those other motions to the following month. However, it did address the motion to vacate or reargue. In denying the defendant's motion to vacate or reargue, the court reasoned that the order it had issued denying the motion to open was appropriate given the plaintiff's testimony that the defendant and his attorney had the plaintiff's litigation file pertaining

---

[4] General Statutes § 35-35 of the Connecticut Antitrust Act provides for the recovery of treble damages together with a reasonable attorney's fee and costs for any violations of the provisions of that chapter.

to the Hartford lawsuit prior to the dissolution hearing. The court further reasoned that the defendant was aware of the lawsuit and, even though it had no specific value at that time, he easily could have requested a percentage of whatever verdict might be rendered in a subsequent trial.

On September 9, 2005, the court issued a memorandum of decision resolving pending motions. With respect to the motions pertaining to the Hartford lawsuit, the court reasoned that it had denied both the motion to open and motion to vacate or reargue because "[a]lthough this lawsuit was instituted in 1998 and was not listed as an asset on the plaintiff's financial affidavit . . . the defendant had knowledge of the pending lawsuit and although no value could be ascribed to the lawsuit at that time, [the] defendant could have requested an order for a percentage of any proceeds that might be recovered."

Subsequently, on January 19, 2006, the defendant filed a motion for articulation, requesting that the court articulate the basis for the orders issued on July 28 and 29, 2005. On June 15, 2006, the court explained that although the plaintiff had not listed the lawsuit on her financial affidavit, she had disclosed fully everything concerning the lawsuit and had not concealed any information. The court explained that it had denied the defendant's motion to open because there was no basis to the defendant's claim that the plaintiff was aware of the value of the lawsuit on July 20, 1999, nor any basis to his claim that she intentionally had withheld this information from him. The court further explained that it had denied the defendant's July 29 motion to vacate or reargue because the defendant's attorney had proceeded with the July 28 hearing on the defendant's motion to open without his client being present, and, on the basis of the evidence presented on July 28, 2005,

it had found no reason or grounds to vacate the decision denying the motion to open.

This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to open the dissolution judgment on the basis of fraud or mutual mistake. We disagree.

"It is a well-established general rule that . . . a judgment rendered by the court . . . can subsequently be opened [after the four month limitation set forth in General Statutes § 52-212a and Practice Book § 17-43][5] . . . if it is shown that . . . the judgment . . . was obtained by fraud . . . or because of mutual mistake." (Internal quotation marks omitted.) *Nelson* v. *Charlesworth*, 82 Conn. App. 710, 713, 846 A.2d 923 (2004).

"We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so

[5] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." Practice Book § 17-43 contains similar language. Courts have interpreted the phrase, "[u]nless otherwise provided by law," as preserving the common-law authority of a court to open a judgment after the four month period. See *In re Jonathan M.*, 255 Conn. 208, 238–39, 764 A.2d 739 (2001).

long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005). A court's determinations as to the elements of fraud and whether there has been a mutual mistake are findings of fact that we will not disturb unless they are clearly erroneous. Id.; *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143, 148, 917 A.2d 605 (2007).

A

The defendant first claims that the court misinterpreted decisional law relating to the opening of judgments and that the evidence presented warranted the opening of the dissolution judgment on the basis of fraud. We disagree.

The party claiming fraud has the burden of proof. *Weinstein* v. *Weinstein*, supra, 275 Conn. 684. "Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . .

"There are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be clear proof of the fraud; and (3) there is a substantial likelihood that the result of the new trial will be different." (Internal quotation marks omitted.) Id., 685.

The defendant claims that the plaintiff's failure to disclose her lawsuit against the city of Hartford on her

financial affidavit was fraudulent.[6] The defendant and his attorney, however, knew about the Hartford lawsuit. It was discussed in open court at a July, 1998 hearing one year prior to the dissolution, and the file was turned over to the defendant's counsel prior to the final hearings in the dissolution matter. After the court rendered its decision in open court on the dissolution, the court specifically asked counsel if there were any other issues to be addressed. The defendant raised some unrelated issues but mentioned nothing about the Hartford lawsuit.[7]

The plaintiff testified, at the July 28 hearing, that she had submitted on her financial affidavit what she thought was the sum total of the value of her assets. She explained that she did not believe the Hartford lawsuit had any value because she was seeking to obtain the school bus contract and because her injunction to prevent the city from awarding the contract to another company had been denied. The time line of events supports the plaintiff's testimony. The plaintiff's application for a temporary injunction was denied in August, 1998, eleven months before the judgment of dissolution. In February, 2000, several months after the July, 1999 dissolution, the plaintiff authorized her attorneys to file an offer of judgment for $25,000, and she testified at the July 28 hearing that she would have accepted as little as $15,000 in settlement of the lawsuit. The court, in its articulation of the denial of the defendant's motion

---

[6] Practice Book § 25-30 (a) requires parties in a marital dissolution action to file "a sworn statement substantially in accordance with a form prescribed by the chief court administrator, of current income, expenses, assets and liabilities. . . ."

[7] On July 20, 1999, after rendering its decision on the dissolution, the court asked the defendant's attorney if she had any questions. The defendant's attorney asked a series of questions, none pertaining to the Hartford lawsuit. Thereafter, the court asked the defendant if he had any questions about the orders, and the defendant's only question pertained to a bed and breakfast that he was purchasing with his mother.

to open, found that this offer, which was an indication of her opinion on the value of the lawsuit, was a relatively insignificant amount in light of the approximately $2 million in assets listed on her financial affidavit. The case against the city was not tried until September, 2000. The jury returned a verdict in favor of the plaintiff for $500,000 on the plaintiff's antitrust claim, but the court granted the defendant's motion to set aside the verdict. In August, 2004, our Supreme Court reversed the decision of the trial court setting aside the verdict and ordered that the verdict be reinstated. In May, 2005, almost six years after the date of dissolution, the plaintiff and the city entered into a stipulated judgment.

Furthermore, the defendant admitted at the July 28 hearing on his motion to open that there was no fraud.[8] "A party is bound by a concession made during the trial by his attorney." (Internal quotation marks omitted.) *Levine* v. *Levine*, 88 Conn. App. 795, 804, 871 A.2d 1034 (2005).

The defendant relies, in part, on *Weinstein* v. *Weinstein*, supra, 275 Conn. 671, in support of his claim of fraud.[9] In *Weinstein*, the defendant owned an interest

---

[8] The following colloquy occurred:

"The Court: Yeah, but the matter was already in litigation—

"[Defendant's Counsel]: Yes.

"The Court:—and your client knew of the litigation. He knew of it.

"[Defendant's Counsel]: Yes.

"The Court: And he had a chance to evaluate it as well.

"[Defendant's Counsel]: And he didn't know what it was worth. She placed no value on it.

"The Court: Well, she didn't either.

"[Defendant's Counsel]: I think under the case law under—

"The Court: So, how—how could you put a value down on something you don't know?

"[Defendant's Counsel]: *That's why I'm saying it's not a fraud on her part*, it's a mutual mistake on her part." (Emphasis added.)

[9] The defendant also relies on *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991), and *Jackson* v. *Jackson*, 2 Conn. App. 179, 478 A.2d 1026, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984), in support of his claim of fraud. Both cases are inapposite. In *Billington*, the defendant husband did not disclose the fact that he received an offer for a parcel of

in a small, privately held software company. Id., 675. Our Supreme Court held that the trial court improperly had denied the plaintiff's motion to open the dissolution judgment because the defendant knew of the value of the asset and fraudulently had undervalued his ownership interest in the company. Id., 688–96. The defendant represented at the dissolution hearing that the value of the company, in which he held an interest, was approximately $200,000. Id., 688. However, an offer to purchase the company for $2.5 million was made after the dissolution judgment was entered, but before the defendant's motion for reconsideration of the financial orders was heard, and he deemed the offer too low. Id. The defendant in *Weinstein* testified that he had based his valuation in his financial affidavit on the company's book

real estate that was significantly greater than the value he assigned to the property on his financial affidavit. *Billington* v. *Billington*, supra, 214. The Supreme Court held that a party seeking to open a judgment concerning the financial aspects of a marriage dissolution on the basis of fraud need not have exercised diligence in an effort to discover and expose the marital fraud because the requirement of due diligence in commercial transactions is not applicable in the marital context. Id., 219–20. In the present case, the defendant and his attorney knew about the allegedly concealed fact, the Hartford lawsuit.

In *Jackson* v. *Jackson*, supra, 2 Conn. App. 179, the defendant wife sought to open the judgment on the basis of the allegation that the plaintiff husband fraudulently failed to disclose that certain stock, which had been bargained for as part of the property settlement, had split three for one prior to the entry of judgment. In that case, we held that the trial court could not reasonably have found that the husband's conduct was not fraudulent, and, accordingly, the trial court's denial of the defendant's motion was clearly erroneous. The husband in *Jackson* knowingly made an untrue representation intended to induce the defendant to act to her detriment, as made abundantly clear by his response at a deposition, where, when asked whether the defendant and her attorney knew about the stock split at the time they agreed to take a certain amount of shares as part of the settlement, the plaintiff replied: "If they didn't know it was their problem." (Internal quotation marks omitted.) Id., 195. In the present case, as the court explained in its articulation of the denial of the defendant's motion to open, there was no basis to the defendant's claim that the plaintiff was aware of the value of the lawsuit on the date of dissolution. Additionally, the plaintiff disclosed the existence of the lawsuit in open court.

value and that he had failed to account for the worth of the intellectual property asset of the software company, in which he owned a substantial minority interest. Id., 689. The court held that this constituted a blatant and deliberate misrepresentation. Id., 691. In order to comply with the requirement of full and frank disclosure, the defendant had a duty to disclose the fact that the company owned this asset and to offer an accurate assessment of the asset's worth, instead of merely providing to the plaintiff's expert reams of documents in which information was buried that might have alerted the plaintiff's expert as to the asset's worth. Id., 690 n.12.

The defendant argues on the basis of *Weinstein*, that it constituted fraud for the plaintiff to have provided him with documentation concerning the Hartford lawsuit but not to have included a value on her financial affidavits. In *Weinstein*, the court concluded that the defendant knew of the value of the asset and fraudulently undervalued his ownership interest in the company. Id., 688–89. The court in *Weinstein* also determined that he was equipped to value that asset because he created it and knew its worth better than anyone else involved in the marriage dissolution proceedings. Id., 690 n.12. Unlike the defendant in *Weinstein*, the plaintiff in the present case did not know at the time of dissolution whether the asset had any value. The plaintiff testified at the July 28 hearing that she would have accepted $15,000 to settle the action after filing a $25,000 offer of judgment in 2000. The value of the parties' assets must be determined as of the time the judgment of dissolution is rendered. *Weinstein* v. *Weinstein*, supra, 275 Conn. 696–97. The court found that the plaintiff's financial affidavit reflected her honest opinion of her assets at that date. The plaintiff's testimony revealed that she was seeking to obtain the school bus contract and to continue her business pursuits. The plaintiff's application for a temporary injunction had been denied in August, 1998,

eleven months before the judgment of dissolution. The plaintiff testified at the July 28 hearing that she had not included the Hartford lawsuit on her 1999 financial affidavit because the injunction had been denied. The plaintiff was still pursuing the contract several years after the judgment of dissolution, and in June, 2003, her request for mandatory injunctive relief was denied. See *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, Superior Court, judicial district of New London, Docket No. CV-98-0547097-S (June 4, 2003). She, however, in the initial divorce case, disclosed to the defendant, to his attorney and to the court the existence of the Hartford lawsuit. When ruling from the bench on the motion to open, the court, *Goldberg, J.*, found that both parties had full knowledge of the lawsuit. In its articulation of the denial of the defendant's motion to open, the court further explained that there was no basis to the defendant's claim that the plaintiff was aware of the value of the lawsuit on the date of dissolution and that the plaintiff did not withhold information from the defendant intentionally. Although the plaintiff technically violated Practice Book § 25-30 (a) by not listing the Hartford lawsuit as at least a contingent asset, the record adequately supports the court's findings.

In light of the entire record before it, we conclude that the court did not abuse its discretion in denying the defendant's motion to open the dissolution judgment on the basis of fraud.

## B

The defendant claims, alternatively, that if the plaintiff's actions did not constitute fraud, then the court should have granted the defendant's motion to open on the ground of mutual mistake. Specifically, the defendant argues that if it is assumed that the plaintiff omitted the value of the Hartford lawsuit from her financial affidavit because she thought the suit had no value at

the time of the divorce and the defendant did not pursue the suit as an asset to be divided, then it is clear that neither party placed a significant value on the suit. Because the value of the lawsuit became apparent several years after the dissolution, the parties' prior thoughts regarding the value of the lawsuit constituted a mutual mistake. We disagree.

"Courts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment obtained by fraud, duress or mutual mistake." *In re Baby Girl B.*, 224 Conn. 263, 283, 618 A.2d 1 (1992). This court has defined a mutual mistake as "one that is common to both parties and effects a result that neither intended." (Internal quotation marks omitted.) *Regis* v. *Connecticut Real Estate Investors Balanced Fund, Inc.*, 28 Conn. App. 760, 765, 613 A.2d 321, cert. denied, 224 Conn. 907, 615 A.2d 1048 (1992); see also *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 537, 630 A.2d 115 (1993) ("mutual mistake exists where both parties are mutually mistaken about the same material fact").

At the time of dissolution, both parties knew of the existence of the Hartford lawsuit. Neither party was clairvoyant, and thus neither knew what the final outcome of the lawsuit would be. The ultimate value of the lawsuit was unknown at the time of dissolution. The plaintiff testified that she did not believe the Hartford lawsuit had any value. As the court observed, the defendant could have requested a percentage of whatever award might be issued in a subsequent trial but did not do so. The fact that the plaintiff later prevailed in the lawsuit and a specific value was attributed to it by a jury does not constitute a mutual mistake. With the assistance of skilled attorneys, the plaintiff's lawsuit went twice to our Supreme Court, the case was developed, and approximately six years after the date of dissolution, the plaintiff finally prevailed, receiving a

sum that dwarfed what she would have settled for shortly after the divorce. The long path through the courts changed the value of the case. A change in circumstances is not tantamount to a mutual mistake. See *Magowan* v. *Magowan*, 73 Conn. App. 733, 742, 812 A.2d 30 (2002) (trial court did not abuse discretion in denying motion to open judgment due to postjudgment change in circumstances), cert. denied, 262 Conn. 934, 815 A.2d 134 (2003); *Pascarelli* v. *Monliterno Stone Sales*, 44 Conn. App. 397, 401 n.7, 689 A.2d 1132 (claim to open voluntary agreement based on mutual mistake must fail because preemption of the statute governing agreement occurred after parties had entered into agreement), cert. denied, 240 Conn. 926, 692 A.2d 1282 (1997). After reviewing the record, we conclude that the court properly rejected the defendant's claim of mutual mistake.

## II

The defendant next claims that the court improperly denied his motion to vacate or reargue. We disagree.

The standard of review for a court's denial of a motion to vacate or reargue is abuse of discretion. *Valentine* v. *LaBow*, 95 Conn. App. 436, 451, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006). "As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) Id., 451–52.

Despite the defendant's absence from the July 28 hearing, his attorney did not request a continuance and proceeded to argue the motion to open. See *LaMacchia* v. *Chilinsky*, 85 Conn. App. 1, 6 n.4, 856 A.2d 459 (plaintiff should have requested continuance from court on issue if he desired to reargue motion on further inquiry), cert. denied, 271 Conn. 942, 861 A.2d 514 (2004). Furthermore, at the July 28 hearing, the plaintiff testified

that the defendant and his attorney had the file pertaining to the Hartford lawsuit. The court denied the motion to vacate or reargue its July 28 orders denying the defendant's motion to open on the basis of fraud or mutual mistake, reasoning that the defendant had the file and was aware of the lawsuit and that his attorney proceeded with the July 28 hearing on his motion to open without his client being present and based on the evidence presented on July 28, 2005. The court did not abuse its discretion and could have reasonably concluded as it did.

The judgment is affirmed.

In this opinion the other judges concurred.