******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ERIC P. SOUSA *v.* DONNA M. SOUSA
(AC 36604)

DiPentima, C. J., and Keller and Flynn, Js.

*Argued December 5, 2016—officially released June 13, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Hon. Lloyd Cutsumpas, judge trial referee.)

*C. Michael Budlong*, with whom was *Brandon B. Fontaine*, for the appellant (defendant).

*William J. Ward*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. A party seeking to open a judgment beyond the passage of the four month limitation period from its rendering provided by General Statutes § 52-212a under an exception for judgments procured by fraud, bears the burden of proving fraud in all of its elements by clear and convincing evidence. At the heart of this appeal is whether the defendant, Donna M. Sousa, proved by clear and convincing evidence that the plaintiff, Eric P. Sousa, knew that the $32,698.82 he valued his pension at when the parties were divorced in 2001 was incorrect. The trial court found that the defendant failed to carry this burden. We affirm that judgment.

We first turn to the procedural history of this case, which explains how it is again before us. This appeal, which stems from a judgment modifying a prior judgment dissolving the marriage of the plaintiff and the defendant has returned to us on remand from our Supreme Court. In *Sousa* v. *Sousa*, 157 Conn. App. 587, 590, 116 A.3d 865 (2015), rev'd, 322 Conn. 757, 143 A.3d 578 (2016), this court held that the trial court, *Hon. Lloyd Cutsumpas*, judge trial referee, improperly denied the defendant's motion to vacate for lack of subject matter jurisdiction a judgment rendered by the trial court, *Resha, J.*, in accordance with a stipulation by the parties, modifying the provision of the judgment of dissolution that divided the plaintiff's pension benefits equally between the parties. Our Supreme Court reversed that decision and remanded the case to us with direction to consider the defendant's remaining claims on appeal. *Sousa* v. *Sousa*, 322 Conn. 757, 790, 143 A.3d 578 (2016).

We next turn to the record, which discloses the following facts, which were either found by Judge Cutsumpas or are undisputed for purposes of this appeal, and procedural history. In November, 2000, after approximately fourteen years of marriage, the plaintiff filed a complaint seeking to dissolve his marriage to the defendant on the ground of irretrievable breakdown. Both parties were represented by counsel throughout the uncontested dissolution proceedings. The plaintiff, who had been employed for fourteen years as a police officer with the Naugatuck Police Department (department), filed a financial affidavit on December 18, 2000, setting forth his financial assets and expenses. Under the "deferred compensation plans" category, the plaintiff wrote "borough pension—value undetermined." Soon thereafter, the plaintiff received a document from the department indicating that, as of April 21, 2001, he had contributed $32,698.82 to the department's pension plan. Consistent with that document, the plaintiff filed a second financial affidavit on November 21, 2001, stating that his pension was valued as of April 21, 2001, at $32,698.82.

The parties were divorced on December 19, 2001. They executed a separation agreement that provided, inter alia, that the plaintiff's pension benefits would be divided equally between the parties pursuant to a qualified domestic relations order (QDRO). The separation agreement further required the plaintiff to pay periodic alimony of $130 per week for five years or until the defendant began cohabitating with another individual.

On January 3, 2002, in the course of preparing the QDRO, the defendant's counsel, Kenneth Potash, obtained the document listing the plaintiff's contributions to the pension, fund as well as a four page document entitled "Appendix A—Pension Fund" (appendix), which set forth, inter alia, the pension plan's vesting requirements and the various formulae for calculating department employees' benefits. Section 10 of the appendix provides that department employees such as the plaintiff who have been continuously employed by the department for ten years are entitled, upon reaching retirement age, to an annual pension benefit calculated based on their earnings and years of service.[1] Attorney Potash provided the defendant with a copy of the appendix prior to completing the QDRO, although she may not have read it. Nevertheless, the defendant was aware at the time of the divorce that the plaintiff's pension was based upon his years of service and earnings.

The QDRO was executed and filed with the court on May 17, 2002. It provided that the defendant shall receive a 50 percent interest in the "marital portion" of the plaintiff's pension, with the marital period running from the date of the marriage on December 20, 1985, to the date of dissolution on December 19, 2001.

In 2003, approximately two years after the divorce, the plaintiff learned that the defendant had begun cohabitating with another individual. The plaintiff telephoned the defendant and informed her of his intention to seek a court order terminating the alimony payments. Sometime later, after referring to the separation agreement, the defendant acknowledged that her cohabitation provided grounds for termination of the alimony. She informed the plaintiff, however, that she needed the alimony payments to finish her education and obtain a teaching degree, higher income, and pension benefits of her own. Accordingly, the defendant offered to relinquish her 50 percent interest in the plaintiff's pension in exchange for three additional years of alimony. The plaintiff agreed and continued to make weekly alimony payments. Neither party reduced the agreement to writing at that time or sought a modification of the original judgment of dissolution.

Three years later, the plaintiff completed the additional alimony payments pursuant to his oral agreement with the defendant. The plaintiff then filed a motion to

modify the judgment of dissolution, seeking to have his full pension returned to him. As the parties agreed, the plaintiff's counsel prepared the motion and accompanying stipulation, which was executed by the parties and submitted to the court for approval. The parties appeared before Judge Resha on January 2, 2007. The plaintiff was represented by counsel, and the defendant was then a self-represented litigant. Judge Resha asked the defendant if she had reviewed the terms of the stipulation with a family relations officer, and the defendant answered in the affirmative. After reading the stipulation into the record, Judge Resha asked the defendant to explain why she was entering into an agreement waiving her interest in the plaintiff's pension. The defendant admitted that, three years earlier, it was her idea to enter into an oral agreement with the plaintiff whereby she would relinquish her rights in the pension in exchange for additional alimony payments. The defendant also indicated that she understood that she could not regain her interest in the pension once she waived it, and that she was comfortable entering into the agreement without the benefit of counsel. Judge Resha found that the stipulation was warranted, accepted it, and made it a final order of the court. No appeal was taken.

The plaintiff ultimately retired in October, 2007, after undergoing spinal fusion surgery in late 2006 to remedy a work related injury that rendered him unable to perform his duties. Thereafter, the plaintiff began receiving an annual pension benefit of $43,992.80.[2]

On March 31, 2011—four years after the 2007 modification of the dissolution judgment and nearly a decade after the plaintiff filed his November 21, 2001 financial affidavit—the defendant filed a motion to open and vacate the modification, asserting that the plaintiff had secured the modification through fraud. Specifically, the defendant claimed that the plaintiff had fraudulently undervalued his pension in the financial affidavit by listing only the value of his contribution—$32,698.82. The defendant further argued that, had the plaintiff disclosed the full value of his pension, there was a substantial likelihood that Judge Resha would have rejected the proposed modification as inequitable. A few months later, the defendant filed a second motion to vacate the modification, this time asserting that Judge Resha lacked subject matter jurisdiction to enter the modification.

Judge Cutsumpas held an evidentiary hearing on the motions on January 14, 2014. On February 25, 2014, Judge Cutsumpas issued a memorandum of decision denying both motions. In denying the defendant's first motion, Judge Cutsumpas found that the defendant failed to prove the prima facie elements of fraud with clear and convincing evidence. First, noting that the defendant failed to present actuarial evidence establish-

ing the value of the plaintiff's pension at the time he filed his 2001 financial affidavit, Judge Cutsumpas found that the defendant failed to prove that the listed amount of $32,698.82 was inaccurate. Second, Judge Cutsumpas found that, even if the plaintiff had misstated the value of his pension, the defendant failed to prove that he did so knowingly. Finally, Judge Cutsumpas found that the defendant adduced "no evidence whatsoever" that, had she known the full value of the plaintiff's pension, the result of a new hearing would have been different.[3] As to the defendant's second motion to vacate, Judge Cutsumpas rejected the argument that Judge Resha lacked subject matter jurisdiction to modify the judgment of dissolution.

In her appeal to this court, the defendant challenged Judge Cutsumpas' denial of her two motions to vacate. Because we agreed with the defendant that Judge Resha lacked subject matter jurisdiction to modify the judgment of dissolution and, therefore, that Judge Cutsumpas had improperly denied her second motion to vacate, we did not reach the merits of the defendant's challenge to Judge Cutsumpas' denial of her first motion to vacate, which asserted fraud. See *Sousa* v. *Sousa*, supra, 157 Conn. App. 601. Instead, we vacated the judgment denying the defendant's first motion because it had been rendered without subject matter jurisdiction and, thus, was void. See id. Our Supreme Court, concluding that it was not "entirely obvious" that Judge Resha lacked subject matter jurisdiction to modify the judgment of dissolution, and that principles of finality of judgments did not support permitting the defendant to collaterally attack the modified judgment, reversed our decision and remanded the case to us with instructions to consider the defendant's remaining claim, which challenges Judge Cutsumpas' denial of her first motion to vacate on the basis of fraud. See *Sousa* v. *Sousa*, supra, 322 Conn. 790. The parties, pursuant to this court's instruction, filed supplemental briefs addressing the remaining issue of fraud in light of the Supreme Court's decision.

The defendant claims that Judge Cutsumpas improperly found that she failed to prove by clear and convincing evidence that the plaintiff obtained her stipulation, and thus the 2007 modification, by fraudulently undervaluing his pension in his 2001 financial affidavit. The defendant has not been consistent throughout these proceedings regarding the theory underlying her claim of fraud. First, the defendant argues in her appellate briefs that undisputed evidence adduced at the January 14, 2014 evidentiary hearing established that the plaintiff committed fraud by misrepresentation—that is, in 2001 he listed the value of his contribution to the pension fund despite knowing that he was entitled to benefits upon retirement that were far more substantial than his mere contribution. Second, the defendant contends that the plaintiff committed fraud by nondisclosure in that he violated his "full and frank disclosure" obliga-

tions by failing to disclose the full value of his pension in his 2001 affidavit or at any time prior to the 2007 modification. Finally, the defendant suggested during oral argument before this court that the plaintiff's conduct amounted to "fraud on the court." We find none of these arguments persuasive.

We first set forth our standard of review and the legal principles that are germane to our discussion. "Our review of a court's denial of a motion to open [based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005).

"Pursuant to General Statutes § 52-212a, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed . . . . An exception to the four month limitation applies, however, if a party can show, inter alia, that the judgment was obtained by fraud." (Internal quotation marks omitted.) *Zilka* v. *Zilka*, 159 Conn. App. 167, 174, 123 A.3d 439 (2015).

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed . . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud. . . . A court's determinations as to the elements of fraud are findings of fact that we will not disturb unless they are clearly erroneous. . . .

"There are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be clear proof of the fraud; and (3) there is a [reasonable probability] that the result of the new trial will be different. . . .

"To determine whether there was proof of fraud,

we consider the evidence through the lens of our well settled policy regarding full and frank disclosure in marital dissolution actions. Our [rules of practice have] long required that at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, the moving party shall file a sworn statement . . . of current income, expenses, assets and liabilities, and pertinent records of employment, gross earnings, gross wages and all other income. . . . The opposing party is required to file a similar affidavit at least three days before the date of the hearing . . . .

"Our cases have uniformly emphasized the need for full and frank disclosure in that affidavit. A court is entitled to rely upon the truth and accuracy of sworn statements required by . . . the [rules of practice], and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. . . . These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence." (Citation omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 275 Conn. 685–86.

"[T]he principle of full and frank disclosure . . . is essential to our strong policy that the private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine. . . . That goal requires, in turn, that reasonable settlements have been knowingly agreed upon. . . . Our support of that goal will be effective only if we instill confidence in marital litigants that we require, as a concomitant of the settlement process, such full and frank disclosure from both sides, for then they will be more willing to [forgo] their combat and to settle their dispute privately, secure in the knowledge that they have all the essential information. . . . This principle will, in turn, decrease the need for extensive discovery, and will thereby help to preserve a greater measure of the often sorely tried marital assets for the support of all of the family members." (Citations omitted; internal quotation marks omitted.) *Billington* v. *Billington*, 220 Conn. 212, 221–22, 595 A.2d 1377 (1991).

I

We begin with the defendant's claim that the plaintiff fraudulently misrepresented the value of his pension in his 2001 financial affidavit. The defendant contends that Judge Cutsumpas erroneously concluded that she failed to prove with clear and convincing evidence that the plaintiff valued his pension at $32,698.82 with the knowledge that he was entitled to benefits far exceeding that amount. We disagree. We conclude that Judge Cutsumpas' finding that the defendant failed to present

clear and convincing evidence that the plaintiff knew the disclosed value was of his pension inaccurate was not clearly erroneous. Moreover, we conclude that Judge Cutsumpas did not clearly err in finding that the defendant failed to proffer clear proof that, had the plaintiff disclosed the "full" value of his pension, the outcome of a new proceeding would have been different.[4]

As a preliminary matter, we note that Judge Cutsumpas' conclusions with respect to the elements of fraud constitute findings of fact; see *Weinstein* v. *Weinstein*, supra, 275 Conn. 685; to which we must accord substantial deference. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Michael J.*, 274 Conn. 321, 346, 875 A.2d 510 (2005). We determine whether factual findings are clearly erroneous "in light of the evidence in the whole record. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jeisean M.*, 270 Conn. 382, 397, 852 A.2d 643 (2004).

We begin with Judge Cutsumpas' finding that the defendant failed to prove with clear and convincing evidence that the plaintiff knew that the amount he listed in his 2001 financial affidavit was inaccurate. Contrary to the defendant's claim on appeal, this finding is amply support by the record and, thus, not clearly erroneous. The plaintiff's financial affidavit, filed in connection with the dissolution proceedings on November 21, 2001, stated that his pension was worth $32,698.82 as of April 21, 2001. That value reflected the total amount that the plaintiff had contributed from his salary to the pension fund until that time. Although, as the defendant argues, the plaintiff was entitled when he filed his affidavit to an annual pension benefit calculated based upon his salary and years of service under § 10 of the appendix, rather than to a mere refund of his contribution, the plaintiff repeatedly testified that, in his understanding, $32,698.82 reflected the benefit he would have been entitled to had he retired on the date he filed the affidavit. Additionally, although the plaintiff admitted that he knew when filing his affidavit that his benefits were "vested,"[5] there was no evidence that he understood the *significance* of the fact that his benefits were vested. To the contrary, the plaintiff testified that the value of his contribution to the fund was "all [he] was entitled to" and that, although his

benefits were vested, he "did not know" whether that entitled him to more than his contribution. In light of this evidence, Judge Cutsumpas reasonably could have found that the plaintiff was unaware that his contribution amount did not reflect an accurate valuation of his pension, and we are not left with a definite and firm conviction that a mistake has been made. Therefore, regardless of whether the plaintiff incorrectly listed his contribution amount, rather than the actuarial value as calculated under § 10 of the appendix, the defendant's fraud claim fails because she failed to demonstrate that the plaintiff did so knowingly. See, e.g., *Terry* v. *Terry*, 102 Conn. App. 215, 227, 925 A.2d 375, cert. denied, 284 Conn. 911, 931 A.2d 934 (2007).

The defendant relies on *Weinstein* v. *Weinstein*, supra, 275 Conn. 685, for the proposition that "[m]isrepresentations of this magnitude cannot be attributed to mistake or miscalculation," but, rather, overwhelmingly evince the plaintiff's knowledge of the misrepresentation and intent to deceive. In *Weinstein*, the defendant stated in his financial affidavit that his interest in his company was worth $40,000 and, two months later, rejected a $2.5 million offer to purchase the company—which would have netted him $500,000 for his interest—because he thought it was too low. *Weinstein* v. *Weinstein*, supra, 688. Our Supreme Court held that the trial court clearly erred in finding that the plaintiff failed to prove that the defendant had knowingly misrepresented the value of his interest, reasoning that the $2.5 million offer served as an "independent appraisal" of the company's worth, and that the "huge disparity" between that value and the defendant's valuation "*compel*[*led*] the conclusion that the defendant knew the company and his interest therein were worth more during the dissolution trial." (Emphasis in original.) Id., 693.

We find the defendant's argument and reliance on *Weinstein* unpersuasive. Unlike in *Weinstein*, we cannot assess the "disparity" of the alleged misrepresentation because, as Judge Cutsumpas observed, the defendant failed to present actuarial evidence establishing the value of the plaintiff's pension at the time he filed his financial affidavit in November, 2001. It was the defendant's burden, as the party asserting fraud, to prove the value of the pension by clear and convincing evidence. "The task of properly valuing pension benefits is complex because such benefits may be defeasible by the death of the employee [spouse] before retirement and the amount of benefits ultimately received depends upon a number of factors that remain uncertain until actual retirement." *Krafick* v. *Krafick*, 234 Conn. 783, 799, 663 A.2d 365 (1995). "It is true that the exact amount of the [pension] benefits to be received often will depend upon whether the employee [spouse] survives his retirement age, how long he lives after retirement and what his compensation level is during his remaining years of service. But these contingencies are suscepti-

ble to reasonably accurate quantification. . . . The present value of a pension benefit may be arrived at by using generally actuarial principles to discount for mortality, interest and the probability of the employee remaining with the employer until retirement age." (Citation omitted.) *Thompson* v. *Thompson*, 183 Conn. 96, 100–101, 438 A.2d 839 (1981).

When the plaintiff filed his affidavit in 2001, he was employed by the department and in his mid-thirties, several years short of the retirement age. Thus, the value of the plaintiff's pension under § 10 of the appendix depended on a number of uncertainties—whether he survived retirement age, his overall life expectancy, and his base salary during his last years of service—and the defendant failed to account for these uncertainties with actuarial evidence. Accordingly, there is no concrete basis for determining the pension's value in 2001, and, thus, the disparity between that value and the listed value of $32,698.82. Furthermore, although the defendant emphasizes in her appellate briefs that the plaintiff has received an annual pension benefit of $43,992.80 since retiring in October, 2007, the plaintiff's current benefits are no reliable indication of the pension's value in 2001 when the plaintiff filed the financial affidavit. The plaintiff's current benefits were determined under § 9 of the appendix, under which he became eligible as a result of remedial work related spinal fusion surgery he underwent in late 2006 that rendered him unable to perform his duties. At the time of his 2001 affidavit, however, the plaintiff qualified only under § 10, which calculates annual benefits under a different formula than § 9. See footnotes 1 and 2 of this opinion. Moreover, the plaintiff's current benefits were determined based upon a base salary that presumably increased from between 2001 and his 2007 retirement, as well as additional, postcoverture contributions that the plaintiff had made to the pension fund since the 2001 divorce. Put simply, although the defendant contests the accuracy of the value listed in the plaintiff's financial affidavit, she has failed to present evidence establishing what the correct value was. Accordingly, her argument that the plaintiff's knowledge of the misrepresentation is inferable from the "magnitude" of the difference between the disclosed value of $32,698.82 and the actual value of the pension lacks merit.

Although the defendant's failure to establish the plaintiff's knowledge of the alleged misrepresentation is dispositive of the defendant's fraud claim, we further conclude that Judge Cutsumpas did not clearly err in finding that the defendant failed to demonstrate a substantial likelihood that, had the plaintiff disclosed the full value of his pension in his 2001 affidavit, as the defendant claims, the result of a new proceeding would be different. See *Weinstein* v. *Weinstein*, supra, 275 Conn. 671; see also A. Rutkin et al., 8A Connecticut Practice Series: Family Law and Practice with Forms

(3d Ed. 2010) § 52:7, p. 318 ("[o]ne must . . . be able to prove that the outcome of a new trial, untainted by the fraud, is likely to be different"). We begin by noting that the January 2, 2007 hearing, at which Judge Resha accepted the parties' stipulated modification of the pension award in the original judgment of dissolution, would never have occurred in the first place had the defendant not offered to relinquish her rights in the plaintiff's pension in exchange for additional alimony payments. Thus, in analyzing whether the defendant proved that the alleged fraud tainted the outcome of the proceeding, our inquiry focuses on the whether the defendant's decision to enter into the agreement with the plaintiff was impacted by the purported misrepresentation, and whether a "full" disclosure of the value of the pension would have prompted Judge Resha to reject the modification as inequitable.

Our review of the record discloses no evidence suggesting that the plaintiff's disclosure of $32,698.82, rather than some greater amount, in his financial affidavit impacted the defendant's decision to exchange her interest in the plaintiff's pension for additional alimony. Significantly, we can merely speculate about the probable impact that a "full" disclosure would have had on the defendant's thinking because, as previously explained, the defendant has failed to establish the actuarial value of the pension. Additionally, the defendant's testimony reflects that her determination that it was worthwhile to give up her pension interest was based not on the value disclosed in the plaintiff's financial affidavit, but on her need for the additional alimony payments in order to complete her degree and to obtain employment, higher income, and pension benefits of her own. Finally, the defendant conceded that Attorney Potash provided her with the appendix containing the formulae for calculating pension benefits before she initiated the exchange,[6] and that, at the time of the divorce, she believed, the plaintiff's pension was based upon his years of service and earnings. Thus, even if we were to assume that the plaintiff fraudulently listed only the value of his pension contribution in the financial affidavit, the defendant has failed to present clear and convincing evidence that the fraud impacted her decision to enter into the stipulation.

Nor does the record suggest that there is a substantial probability that Judge Resha would have rejected the modification had he known that the plaintiff inaccurately valued his pension in his 2001 financial affidavit. At no point during the modification hearing did the defendant mention the plaintiff's financial affidavit or suggest that she had relied on the representations therein. During her colloquy with Judge Resha, the defendant stated that the exchange was her idea in order to continue receiving alimony payments despite her cohabitation, that she understood that the modification of the judgment of dissolution could not be undone,

and that she was comfortable entering into the agreement without the benefit of an attorney. Critically, moreover, the defendant admitted that, by that time, the plaintiff had completed the three additional years of alimony and, thus, that she had already received the benefit of her bargain. On the basis of this record, we conclude that Judge Cutsumpas did not clearly err in finding that the defendant failed to demonstrate a substantial likelihood that, but for the plaintiff's purported fraudulent conduct, the result of a new modification hearing would have been different.

## II

The defendant next claims that Judge Cutsumpas clearly erred in finding that she failed to prove with clear and convincing evidence that the plaintiff committed fraud by nondisclosure. Specifically, the defendant argues that the plaintiff violated his full and frank disclosure obligations by listing only the value of his contribution in his financial affidavit. The defendant further contends that, even if the plaintiff genuinely believed that his pension was worth $32,698.82 in 2001, he committed fraud by nondisclosure by failing to file a corrected or updated affidavit prior to the 2007 modification.[7] We are not persuaded.

"Fraud by nondisclosure, which expands on the first three of [the] four elements [of fraud], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment. . . . In a marital dissolution case, the requirement of a duty to speak is imposed by Practice Book § [25-30], requiring the exchange and filing of financial affidavits . . . and by the nature of the marital relationship." (Citations omitted.) *Gelinas* v. *Gelinas*, 10 Conn. App. 167, 173, 522 A.2d 295, cert. denied, 204 Conn. 802, 525 A.2d 965 (1987).

We first reject the defendant's argument that the plaintiff committed fraud by nondisclosure by disclosing only the value of his contribution in his financial affidavit. Fraud by nondisclosure involves the failure to make a full and fair disclosure of *known facts* and, as explained in part I of this opinion, Judge Cutsumpas properly found that the defendant failed to present clear and convincing evidence that the plaintiff *knew* he was entitled to more than his contribution amount. Thus, the defendant failed to prove that the plaintiff "deliberately conceal[ed] or purposely mislead" her regarding the value of his pension. *Pospisil* v. *Pospisil*, 59 Conn. App. 446, 451, 757 A.2d 665, cert. denied, 254 Conn. 940, 761 A.2d 762 (2000); see also 8A A. Rutkin et al., supra, § 52:7, p. 320 ("[g]enerally, one has the obligation to

disclose only 'known facts' ").

In any case, the record reveals that the defendant received a full and frank disclosure. Attorney Potash, and thus the defendant, received the appendix and document listing the plaintiff's contributions in early 2002, *before* the defendant proposed to exchange her pension rights for additional alimony. See footnote 6 of this opinion. Additionally, the appendix is only four pages long and spells out, in clear, concise, and explicit language, the requirements for obtaining vested status and the various formulae for calculating the present value of department employees' pension benefits. Therefore, unlike the cases holding that the disclosure of assets through vague references or mass documentation does not constitute full and frank disclosure; see *Weinstein* v. *Weinstein*, supra, 275 Conn. 690 n.12; *Jackson* v. *Jackson*, 2 Conn. App. 179, 191, 478 A.2d 1026, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984); the defendant had been provided, through her attorney, with clear notice of the relevant attributes of the plaintiff's pension, including its value and vesting status, all the information she needed to determine years later whether to relinquish her 50 percent interest in the pension in exchange for three additional years of alimony payments.[8]

Finally, citing *Weinstein* v. *Weinstein*, supra, 275 Conn. 671, the defendant asserts that the plaintiff's duty to disclose the pertinent details of his pension extended until Judge Resha entered the modification on January 2, 2007, and the plaintiff committed fraud by failing to file an updated or corrected financial affidavit prior to that time. Our Supreme Court observed in *Weinstein* that, because the value of parties' assets must be determined at the time of the dissolution, "the duty to update pertinent discovery responses and to disclose facts relevant to that determination necessarily must extend until the judgment is rendered. . . . Thus . . . the duty to disclose continued until the judgment of dissolution was final." (Citations omitted; internal quotation marks omitted.) Id., 697–98. The court further observed that, where a motion for reconsideration is filed, the finality of the judgment is suspended until the motion is acted upon. Id., 699–700. Finally, the court held that, "[i]n imploring the dissolution court [at the hearing on the motion for reconsideration] to reduce his financial obligations to the plaintiff, the defendant necessarily reignited his duty to disclose fully and frankly any new financial information because such information was directly pertinent and material to the very issue the defendant was asking the court to reconsider." (Emphasis omitted.) Id., 701.

We disagree that the plaintiff committed fraud by failing to file an updated financial affidavit prior to the 2007 modification. The judgment of dissolution became final in 2001, cutting off the plaintiff's obligation to

continue to disclose financial information pertinent to the dissolution proceedings. The defendant never asked the plaintiff to file an updated financial affidavit prior to entering into the oral agreement or at any time leading up to the modification. Furthermore, unlike in *Weinstein*, the plaintiff did not "reignite" his duty to disclose additional financial information because, as the defendant readily admitted, she was the one who proposed the exchange of her pension rights for additional alimony because she needed the alimony to continue her education and to obtain better employment and benefits. Although the plaintiff prepared the stipulation and filed the motion to modify the judgment of dissolution, he took those measures only after completing his three additional years of alimony payments in accordance with his agreement with the defendant. The defendant initiated this deal with the plaintiff, not the other way around. Accordingly, we conclude that, under these circumstances, the plaintiff was not obligated to make additional financial disclosures prior to the modification.

### III

Finally, the defendant stated during oral argument before this court that her fraud claim is in the nature of "fraud on the court." Although the defendant does not utilize that term in her briefs, she does cite to *Billington* v. *Billington*, supra, 220 Conn. 222, which discusses the doctrine. In that case, our Supreme Court limited claims of fraud on the court in the marital litigation context "to situations where *both* parties join to conceal material information from the court." (Emphasis added.) Id., 225. In the present case, the record discloses no evidence that both parties joined to conceal information from Judge Resha. Indeed, any such claim would be antithetical to the defendant's central claim that she was induced into entering into the modification agreement by the plaintiff's fraud. Accordingly, the doctrine of fraud on the court is wholly inapposite.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Specifically, § 10 of the appendix provides in relevant part: "Each employee who terminates his employment prior to normal retirement shall acquire a vested interest in his/her pension benefits provided that said employee has at least ten (10) continuous years of employment as a full-time employee with the Borough during which period said employee contributed toward the pension plan. Said employee shall be paid a pension benefit equal to two percent (2%) of his final three (3) years average base salary multiplied by his years of credited service. Said pension benefits shall begin when the employee reaches the retirement age referred to in the agreement and said benefit shall be limited to a maximum of sixty percent (60%) of the final three (3) year average base salary."

[2] As a result of his disability, the plaintiff's pension benefits were calculated under § 9 of the appendix, which provides that employees with at least ten years of service who become unable to perform their duties, and who obtain certification from three physicians, "may be retired on a monthly allotment equal to one-half (1/2) of the average monthly pay received by him during the three (3) years immediately preceding the time of his retirement."

[3] Judge Cutsumpas also noted that "some of the defendant's testimony" at the January 14, 2014 evidentiary hearing "was conflicting and lacked

credibility," but he did not specify which portions of the defendant's testimony lacked credibility. Additionally, after noting that the doctrine of laches precludes a finding of fraud, Judge Cutsumpas stated—in passing and without making any explicit factual finding—that, "while laches was not specifically pleaded, it is worthy of note that approximately four years passed after the parties entered into the stipulation which the defendant now claims was the product of fraud." Neither party attempted to clarify these vague statements by filing a motion for articulation.

[4] As previously stated, Judge Cutsumpas further found that the defendant failed as a threshold matter to prove that the $32,698.82 value listed in the plaintiff's financial affidavit was inaccurate. Because the defendant failed to demonstrate other necessary elements of her fraud claim, we need not address whether this finding was clearly erroneous.

[5] "Vested" pension benefits are "pension interests in which an employee has an irrevocable . . . right, in the future, to receive his or her account balance (under a defined contribution plan), or his or her accrued benefit (under a defined benefit plan), regardless of whether the [employment] relationship continues." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 788 n.12, 663 A.2d 365 (1995).

[6] We also note Attorney Potash's testimony that he received the appendix on January 3, 2002. This was nine years before the defendant's motion to open. Receipt of this information by Attorney Potash is the functional equivalent of receipt by the defendant. "[N]otice to, or knowledge of, an agent, while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal. . . . An attorney is the client's agent and his knowledge is imputed to the client." (Citations omitted; internal quotation marks omitted.) *National Groups*, *LLC* v. *Nardi*, 145 Conn. App. 189, 201, 75 A.3d 68 (2013).

[7] Although the defendant argues that the plaintiff's fraudulent nondisclosure "presents an example of continuing fraud" that began in 2001 at the time of the dissolution and extended until the 2007 modification, she clarified at oral argument before this court that she is not seeking to open the judgment of dissolution on the basis of fraud, only the modification.

[8] We are not suggesting that the defendant's fraud claim fails because of a failure on her part to exercise due diligence. Our Supreme Court eliminated the due diligence requirement in fraud actions, reasoning that "the requirement of diligence in discovering fraud is inconsistent with the requirement of full disclosure because it imposes on the innocent injured party the duty to discover that which the wrongdoer already is legally obligated to disclose." *Billington* v. *Billington*, supra, 220 Conn. 220. Our analysis turns not on the defendant's failure to discover the information about the plaintiff's pension, but on the fact that she had received an adequate disclosure years prior to her initiation of her proposal to relinquish her rights in the pension in exchange for three additional years of alimony, which might have otherwise been ordered terminated.

———————————————