******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CAROLYN H. LONGBOTTOM *v.*
RICHARD H. LONGBOTTOM
(AC 42274)

Prescott, Bright and Harper, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
denying her motions to open and to modify the court's previous judgment
modifying an educational support order. The parties' separation agree-
ment, which was incorporated into the dissolution judgment, included
a section pertaining to the division of costs for educational support for
their daughter. That section did not contain terms setting forth a specific
allocation of responsibility between the parties with regard to the educa-
tional expenses but provided that the court would retain jurisdiction
over the issue and that the judgment would remain modifiable. The
defendant filed a postjudgment motion to modify the educational support
order, seeking to establish each party's responsibility regarding their
daughter's college costs and expenses, which the court granted, ordering
that the plaintiff was responsible for 45 percent of the college costs and
expenses for the 2017-2018 school year. Thereafter, the plaintiff filed a
motion to open the judgment and a motion to modify the educational
support order, alleging fraudulent nondisclosure on the part of the defen-
dant with regard to his income. The court denied the plaintiff's motions,
concluding that the plaintiff had the defendant's accurate financial infor-
mation, and the plaintiff appealed to this court. *Held*:

1. The trial court did not fail to determine whether the plaintiff had met
   her burden of proof to establish the existence of probable cause that
   the defendant committed fraud by nondisclosure; the trial court's memo-
   randum of decision explicitly set forth the definition of fraud and the
   legal standard for opening a judgment when fraud is alleged before it
   ultimately denied the plaintiff's motions and it was implicit in the court's
   rejection of the plaintiff's claim that the court considered the facts as
   applied to the appropriate legal framework and made a determination
   on that basis.

2. The trial court did not abuse its discretion in denying the plaintiff's motions
   to open and to modify the judgment on the basis of fraud; in light of
   the evidence before the court in ruling on the plaintiff's motion to open,
   it was not an abuse of discretion for the court to conclude that the
   plaintiff failed to establish the existence of probable cause that the
   defendant had fraudulently concealed certain financial information dur-
   ing the proceedings on his motion to modify the educational support
   order, the stock option sale proceeds were reflected in the defendant's
   2016 W-2, and, although listed in a separate section of his financial
   affidavit, were on the affidavit, not omitted or concealed, and the defen-
   dant testified that his financial affidavit was truthful and honest, testi-
   mony which the court could have credited, and, in concluding that the
   plaintiff had failed to meet her burden of fraudulent nondisclosure, the
   court had no basis on which to modify, on the basis of fraud, its judgment
   on the educational support order.

3. This court declined to review the plaintiff's claims attacking the court's
   understanding, interpretation and application of the defendant's finan-
   cial affidavits and tax documents; the plaintiff's claims regarding
   whether the trial court properly understood the defendant's financial
   information were not properly before this court because this question
   was unrelated to the question of whether the defendant fraudulently
   concealed information from the court and the plaintiff, which was the
   sole basis for the plaintiff's motions open and to modify.

Argued January 14—officially released April 21, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-

trict of Hartford and tried to the court, *Carbonneau, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Nastri, J.*, granted the defendant's postjudgment motion to modify educational support; subsequently, the court, *Nastri, J.*, denied the plaintiff's motions to open the judgment modifying the educational support order and to modify the educational support order, and the plaintiff appealed this court. *Affirmed.*

*Carolyn H. Mackenzie*, self-represented, the appellant (plaintiff).

*Greg C. Mogel*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellee (defendant).

*Opinion*

HARPER, J. The self-represented plaintiff, Carolyn H. Longbottom, appeals from the judgment of the trial court denying her motions to open and to modify the court's previous judgment modifying an existing educational support order on the basis of the alleged fraudulent nondisclosure of the defendant, Richard H. Longbottom. On appeal, the plaintiff claims that the court erred by concluding, inter alia, that she had failed to prove that there was sufficient probable cause of fraud by nondisclosure to permit the court to open the judgment and allow for discovery, which would have established the merits of her motion for modification. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant were married in Johannesburg, South Africa, in 1994, and two children were born of the marriage. In October, 2011, the plaintiff initiated dissolution proceedings. Thereafter, the parties entered into a dissolution of marriage agreement (agreement), which was incorporated into the judgment of dissolution rendered on October 12, 2012. Section six of the agreement pertained to the division of costs for educational support of their daughter. At the time the agreement was incorporated into the judgment, its terms did not include a specific allocation of responsibility between the parties with regard to these education expenses, but it provided that the court would retain jurisdiction over the issue and that the judgment would remain modifiable in accordance with state statutory law regarding modification of support orders.[1]

The defendant filed a postjudgment motion to modify the educational support on January 4, 2017, in order to establish each party's responsibility regarding their daughter's college costs and expenses. During a hearing on the defendant's motion, held on June 28, 2017, the court instructed the parties to exchange tax returns and financial documents in order to determine whether either side had any issues pertaining to the information contained in the other party's documents. The plaintiff notified the court that she had concerns about the defendant's documents and, specifically, brought to the attention of the court her concern that the income listed on the defendant's financial affidavit did not account for the value of certain stock option sale proceeds that the defendant had received.[2] Accordingly, the court heard argument from the self-represented plaintiff and the defendant's counsel on that issue, and admitted the tax returns of both parties and the defendant's 2016 W-2 into evidence.

On July 12, 2017, the court granted the defendant's motion to modify the educational support order. In its

decision, the court made findings regarding each party's net weekly income, assets, and liabilities. Specifically, the court found that "[t]he plaintiff has a net weekly income of $1307, including alimony. She has assets of $1,217,276 and liabilities of $5200. . . . The defendant has a net weekly income of $3466. He has assets of $1,548,512.60 and liabilities of $6700." (Footnote omitted.) Ultimately, the court concluded that "[t]he plaintiff shall pay 45 percent and the defendant 55 percent of the cost of [their daughter's] 2017–2018 . . . tuition, room, board, dues, registration and routine fees— including but not limited to books and laboratory fees— after those costs are offset by all scholarships, grants and loans."

On November 13, 2017, the plaintiff, alleging fraudulent nondisclosure on the part of the defendant, filed a motion to open the July 12, 2017 judgment modifying the educational support order and a motion to modify the educational support order. The plaintiff alleged in her motions that the defendant had materially misrepresented his income on his financial affidavit submitted in connection with his motion to modify, such that the court should open the judgment on the basis of fraud in order to permit further discovery and then modify the educational support order. Specifically, she alleged that the defendant had fraudulently misled the court by including $100,429, the amount he describes as proceeds from the sale of stock options, under his assets but not under his income.

At the hearing on the plaintiff's motions, held on September 7, 2018, the plaintiff presented an expert witness who testified that income was omitted from the defendant's financial affidavit. The defendant testified in rebuttal and explained that the stock sale proceeds were accounted for under his assets in his affidavit and that he indeed had disclosed that amount to the court prior to the court's July 12, 2017 decision on his motion for modification.

On October 22, 2018, the court rendered judgment denying the plaintiff's motions to open and to modify. The court stated: "The defendant's gross income and the proceeds from the sale of his stock options were disclosed in his financial affidavit, albeit in two different places. They were disclosed in the same place on his 2016 Form 1040 and his 2016 W-2. Consequently, the plaintiff had the defendant's accurate financial information during the hearing." This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff raises nine issues that she argues constitute error on behalf of the trial court in rendering its judgment denying her motions to open and to modify. Upon careful review, her claims can be summarized and condensed into three: (1) the court failed to determine whether the plaintiff had met her burden of proof to establish the existence of probable

cause that the defendant committed fraud by nondisclosure; (2) to the extent that the court actually determined that the plaintiff had failed to meet her burden of proof, the court nonetheless abused its discretion in making that determination and in denying the plaintiff's motions to open the judgment and to modify the educational support order; and (3) the court failed to understand the implications of its factual determinations and holding.[3]

In response, the defendant argues that the court did determine that the plaintiff had failed to meet her burden of proof in establishing probable cause of fraudulent nondisclosure and that the court did not abuse its discretion in denying the plaintiff's motions to open and to modify. We agree with the defendant and affirm the judgment of the trial court.

I

The plaintiff claims first that the court failed to determine whether she had met her burden of proof to establish the existence of probable cause that the defendant committed fraud by nondisclosure. We disagree with the plaintiff.

"The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . An implication is defined as an inference of something not directly declared, but arising from what is admitted or expressed. . . . It is used where the intention in regard to the subject matter is not manifested by explicit and direct words, but is gathered by implication or necessary deduction from the circumstances, the general language or the conduct of the parties." (Citations omitted; internal quotation marks omitted.) *Gorelick* v. *Montanaro*, 94 Conn. App. 14, 30, 891 A.2d 41 (2006).

The court's memorandum of decision set forth in explicit terms the definition of fraud and the legal standards for establishing probable cause of fraud and for opening judgments in the context of alleged fraud. After a thorough overview of the applicable legal principles that guided its decision, the court ultimately denied the plaintiff's motions to open and to modify. Implicit in the court's analysis, when construed as a whole; see id.; is the court's finding that the plaintiff, before the court rendered its July 12, 2017 judgment granting the defendant's motion to modify the educational support order, had received the financial information from the defendant that she claims was fraudulently withheld

and that she, therefore, failed to establish probable cause of fraudulent nondisclosure.[4] Though the court does not state this in explicit terms, it is implicit in its rejection of the plaintiff's claim that the court considered the facts as applied to the appropriate legal framework and made a determination on that basis. Accordingly, we conclude that the court did determine that the plaintiff failed to establish probable cause of fraudulent nondisclosure.

## II

Next, the plaintiff claims that, even if the court determined that she failed to establish probable cause of fraudulent nondisclosure, it improperly denied her motions to open and to modify the judgment on that basis. We disagree with the plaintiff.

We first set forth the legal principles that guide our review of a court's denial of a motion to open a judgment based on alleged fraud. "It is a [well established] general rule that . . . a judgment rendered by the court . . . can subsequently be opened [after the four month limitation set forth in General Statutes § 52-212a and Practice Book § 17-43] . . . if it is shown that . . . the judgment . . . was obtained by fraud . . . ." (Footnote omitted; internal quotation marks omitted.) *Terry* v. *Terry*, 102 Conn. App. 215, 222, 925 A.2d 375, cert. denied, 284 Conn. 911, 931 A.2d 934 (2007). "Our review of a court's denial of a motion to open [based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court . . . to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . .

"In considering a motion to open the judgment on the basis of fraud, then, the trial court must first determine whether there is probable cause to open the judgment for the limited purpose of proceeding with discovery related to the fraud claim. . . . This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . If the moving party demonstrates to the court that there is probable cause to believe that the judgment was obtained by fraud, the court may permit discovery." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 174 Conn. App. 1, 5–6, 164 A.3d 787, cert. denied, 327 Conn. 929, 171 A.3d 455 (2017); see also *Sousa* v. *Sousa*, 173 Conn. App. 755, 765, 164 A.3d 702, cert. denied, 327

Conn. 906, 170 A.3d 2 (2017).

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud." (Internal quotation marks omitted.) *Spilke* v. *Spilke*, 116 Conn. App. 590, 595, 976 A.2d 69, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009).

"Fraud by nondisclosure, which expands on the first three of [the] four elements [of fraud], involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak. . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment. . . . In a marital dissolution case, the requirement of a duty to speak is imposed by Practice Book § [25-30], requiring the exchange and filing of financial affidavits . . . and by the nature of the marital relationship." (Internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 441, 93 A.3d 1076 (2014).

In the present case, the plaintiff presented the court with evidence that the proceeds from the sale of the defendant's stock options should have been listed as a part of his income in addition to his assets on his financial affidavit. The plaintiff proffered an expert witness, William Murray. In the expert disclosure, it was expected that he would testify "[t]hat it is likely that the [defendant's] financial affidavit submitted in connection with the July 17, 2017 hearing omitted certain income from the husband's employer compensation plan, so as to be materially false and misleading." On direct examination, Murray indeed testified that his understanding "is that income received from shares is also includable income on a financial affidavit." During cross-examination, however, Murray acknowledged that the stock amount in fact had been disclosed on the defendant's affidavit as an asset, and he further conceded that the defendant's 2016 W-2, which was presented to the court during the initial hearing on the defendant's motion to modify, reflected an income amount that accounted for the stock option sale proceeds that had not been included as income on his affidavit.

In response, the defendant testified that the value of

his stock options, both vested and unvested, were listed on his financial affidavit as assets and that his financial affidavit was truthful and honest.[5] In his closing argument, the defendant further emphasized the fact that the court had been provided with the defendant's 2016 W-2 and tax returns, all of which accounted for the stock option sale proceeds, and argued that the plaintiff could not establish probable cause of fraudulent nondisclosure because the information she claimed was misrepresented had been readily provided to the court at the appropriate time.

In assessing whether, on the basis of this evidence, the court abused its discretion in denying the plaintiff's motion to open, we are mindful of our standard of review, which requires us to make every reasonable presumption in favor of the court's action. The court's memorandum of decision states: "The defendant's gross income and the proceeds from the sale of his stock options were disclosed in his financial affidavit, albeit in two different places. . . . Consequently, the plaintiff had the defendant's accurate financial information during the hearing." The court acknowledged that, although the stock sale income and proceeds were in different places, they *were indeed listed* on the affidavit, and not omitted or concealed. The court also had the defendant's 2016 W-2 and tax returns, which showed the stock options he received as income. The court was aware of these facts prior to rendering judgment on the defendant's motion to modify, because they were raised by the plaintiff and addressed by both parties during the hearing on the defendant's motion to modify. See also footnote 4 of this opinion.

Additionally, "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . As such, the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Sandra O.*, 51 Conn. App. 463, 468, 724 A.2d 1127 (1999). In the present case, the court reasonably could have credited the defendant's testimony during the hearing on the plaintiff's motions that his financial affidavit was "truthful and honest to the best of [his] knowledge and belief." Particularly, the court reasonably could have credited the defendant's candor with the court in pointing the court to the exact location of the amount claimed by the plaintiff to be materially misrepresented in the affidavit, and in submitting his relevant W-2 form and tax returns to the court and to the plaintiff. In light of the evidence before the court in ruling on the plaintiff's motion to open the judgment on the basis of fraudulent nondisclosure, it was not an abuse of discretion for the court to conclude that the plaintiff had failed to establish the existence of probable cause that the defendant had

fraudulently concealed information during the proceedings on his motion for modification of the parties' educational support order. In concluding that the plaintiff had failed to meet her burden to establish probable cause of fraudulent nondisclosure, the court also had no basis on which to modify, on the basis of fraud, its judgment on the educational support order. Accordingly, on the basis of the record and the facts before us, we cannot conclude that the court abused its discretion in denying the plaintiff's motions to open and to modify the judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Section 6.1 of the agreement provides in relevant part: "The Court shall retain jurisdiction over the issue of the amount of each party's financial obligation for [their daughter's] educational expenses, pursuant to section 46b-56c of the . . . General Statutes. . . ."

Section 6.4 of the agreement provides: "The provisions of this section [6] shall be subject to modification in the same manner as is provided by the Statutes for any support order and the Court shall retain jurisdiction for such purpose. In determining whether to modify this order, the Court shall consider all relevant circumstances at that time, as such are defined in section 46b-56c of the Statutes."

[2] The defendant had been earning stock options from Caterpillar, his employer, since he began working for Caterpillar approximately eighteen years prior to the June 28, 2017 hearing on his motion to modify.

[3] This third category of claims is in reality an attack on the court's understanding, interpretation and application of the defendant's financial affidavits and tax documents provided to the court in connection with its July 12, 2017 educational support order. Specifically, the plaintiff asks this court to review in relevant part: "Whether the trial court was correct in holding that '[a]t the evidentiary hearing [regarding the educational support order] the defendant provided the plaintiff with a financial affidavit showing 2016 gross income of $244,148.' " "Whether the trial court understood the implication in holding that: '[o]n the 2016 Form 1040, the defendant's gross wages and the proceeds from the sale of his stock options were combined on line [22].' " And, "Whether the trial court understood the argument that, '[t]he defendant's counsel pointed out in his closing argument at the evidentiary hearing [regarding the educational support order] that the stock options were included as assets on the financial affidavit and as income on his tax returns.' "

Whether the court properly understood the defendant's financial information is wholly unrelated to the question of whether the defendant fraudulently concealed information from the court and the plaintiff, which was the sole basis for the plaintiff's motions to open and to modify. To the extent that the plaintiff believes that the information contained in the defendant's financial documents does not support the court's July 12, 2017 educational support order, her remedy was to appeal from that judgment, something she did not do. Her motions to open and to modify, based solely on alleged fraudulent nondisclosures, which we conclude properly were denied by the court, cannot be used to resurrect arguments that she wished she had made before the court issued its educational support order or in an appeal from that judgment. Thus, we decline to review these claims as they are not properly before us.

[4] As a matter of fact, the plaintiff, herself, argues in her reply brief: "In the hearing on June 28, 2017, the plaintiff alerted the trial court to the fact that the defendant did not disclose income from all sources, and specifically, that he had not disclosed income from stock options on his financial affidavit. This was evident in plain sight by looking at the defendant's financial affidavit. This was also evident by comparing the earnings shown on the defendant's W-2 and his tax returns, to the income disclosed on his financial affidavit." This statement demonstrates an acknowledgment that this information was available to the plaintiff at the time of the hearing on the defendant's motion for modification and that the trial court was aware of the information before it rendered judgment granting the defendant's motion.

[5] The following exchange occurred between the defendant's counsel and

the defendant:

"Q. And sir, on your financial affidavit under stocks, bonds, mutual funds—

"A. Uh-huh.

"Q. —do you show that you have Caterpillar stock of about $90,000?

"A. I do.

"Q. And do you have vested stock of another $4,000?

"A. Yes.

"Q. And you have unvested stock that you list at $147,000. Is that correct?

"A. Unvested—

"Q. Right there, the line under—

"A. Yes, I do.

"Q. Okay. And sir, do you also show an E*TRADE various account?

"A. Correct.

"Q. How much was in there?

"A. 268,000.

"Q. Okay. Can you tell me when your stocks vest with Caterpillar, where do they go?

"A. They go to my E*TRADE account.

"Q. Okay.

"A. And they go into capital shares.

"Q. Okay, and those stocks when they vest, they . . . just automatically vest. Right?

"A. Automatically vest, as I said, into [Caterpillar] stock.

"Q. Okay, on a certain day?

"A. Correct.

"Q. Okay. So, you do nothing to make that occur?

"A. Nothing at all.

"Q. And it just transfers into your E*TRADE account. Is that correct?

"A. Correct."

———————————————